Filed 3/28/24  P. v. Damagnus CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079984 |
| v. | (Super.Ct.No. SWF003600) |
| JOSEPH OLIVER DAMAGNUS III, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Reversed and remanded with directions.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Lynne G. McGinnis and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Joseph Oliver Demagnus, III, filed a petition for resentencing pursuant to Penal Code section 1172.6,[1] which the court denied at the prima facie stage. On appeal, defendant contends the court erred in denying his petition. We reverse and remand the matter for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2003, defendant committed a robbery of a business with several associates. Testimony at trial established that as defendant ran from the scene, he fired several shots at two brothers who were working at the business. However, one of defendant's associates, who originally identified defendant as the shooter during an investigatory interview, testified that he, rather than defendant, fired the gun. (*Demagnus I*, *supra*, E046214; *Demagnus II*, *supra*, E074271.)

On January 17, 2008, a jury found defendant guilty of two counts of attempted murder (§§ 664, 187, subd. (a), counts 1 & 2), two counts of assault with a firearm

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] We granted defendant's request that we take judicial notice of this court's opinions from defendant's appeal from the judgment (*People v. Demagnus.* (Aug. 28, 2009, E046214) [nonpub. opn.] (*Demagnus I*)), and defendant's appeal from his former section 1170.95 petition (*People v. Demagnus* (July 29, 2020, E074271) [nonpub. opn.] (*Demagnus II*), both of which the People requested the court below take judicial notice.

Although we recount the facts as recited in *Demagnus I* and *Demagnus II*, we are cognizant that Assembly Bill No. 200 limited the use of prior appellate opinions by trial judges ruling on section 1172.6 petitions in most instances to " 'the procedural history of the case recited.' [Citation.]" (*People v. Clements* (2022) 75 Cal.App.5th 276, 292; accord *People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. omitted ["If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage."]; accord *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9.)

(§ 245, subd. (a)(2), counts 3 & 4), one count of attempted robbery (§§ 664, 211, count 5), one count of robbery (§ 211, count 6), and one count of being a felon in possession of a firearm (§ 12021, subd. (a)(1), count 7). The jury additionally found true allegations that in his commission of the counts 1, 2, 5, and 6 offenses, defendant personally discharged a firearm causing great bodily injury to another (§ 12022.53, subd. (d)), and that during his commission of the counts 3 and 4 offenses, he personally used a firearm (§ 12022.5, subd. (a)(1)). The jury also found true allegations that defendant had suffered two prior strike convictions (§§ 667, subds. (b)-(i) & 1170.12, subd. (c)(2).). The court sentenced defendant to an indeterminate term of imprisonment of 139 years to life. (*Demagnus I*, *supra*, E046214; *Demagnus II*, *supra*, E074271.)

Defendant appealed. This court affirmed the judgment. (*Demagnus I*, *supra*, E046214.)

On May 28, 2019, defendant filed a petition for resentencing in which he maintained he had been convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine. The People filed a response asserting defendant's petition should be denied because he was the actual shooter and had only been convicted of attempted murder. The court dismissed the petition based on then-existing authority, which provided that former section 1170.95

3

relief did not apply to those convicted of attempted murder.[3] (*Demagnus II*, *supra*, E074271.)

Defendant appealed. This court affirmed the order. (*Demagnus II, supra,* E074271.)

On January 7, 2022, defendant filed a petition for resentencing pursuant to section 1172.6.[4] Defendant attached to his petition a purported copy of the court's instruction of the jury that defendant could be convicted of attempted murder if it was a natural and probable consequence of his participation in the underlying crimes of armed or attempted armed robbery. (CALJIC 3.02) Defendant additionally attached purported portions of the reporter's transcript of the People's closing argument contending that the jury could find defendant guilty of murder under the natural and probable consequences doctrine.

---

[3] Defendant correctly observes that, "Although the opinion in *Demagnus II* indicates that the trial court also dismissed the petition on the ground that [defendant] was the actual shooter . . . the record . . . shows that the basis for trial court's dismissal was 'strictly because it was attempted murder.' " In *Demagnus II*, we wrote, "The court dismissed the petition on *the bases* asserted by the People in their motion[,]" which included both that defendant was the actual shooter and that he had been convicted of *attempted* murder. (*Demagnus II*, *supra*, E074271 (italics added).) However, the trial court actually cited a now depublished case, which held that former section 1170.95 relief did not apply to those convicted of attempted murder, as authority for dismissing the case. Thus, contrary to our statement in *Demagnus II*, and that of the People in their brief, the trial court did not deny the petition on the basis that defendant was the actual shooter.

[4] Defendant's second petition reflected the fact that the legislature had "amended section 1172.6 to make clear that defendants convicted of attempted murder under the natural and probable consequences doctrine or manslaughter are entitled to seek resentencing relief. (Sen. Bill No. 775 . . . ; Stats. 2021, ch. 551, §§ 1-2, eff. Jan. 1, 2022.)" (*People v. Griffin* (2022) 85 Cal.App.5th 329, 332, fn. 2)

At a hearing on April 22, 2022, the People stipulated to the issuance of an order to show cause (OSC). The court granted the request. The court issued the OSC on April 25, 2022.

On June 10, 2022, the People filed a request that the court summarily deny defendant's petition. In addition to requesting that the court take judicial notice of this court's decisions in *Demagnus I* and *Demagnus II*,[5] the People also requested the court take judicial notice of the jury instruction and verdict forms in the case. The People conceded the jury had been instructed on aiding and abetting principles and the natural and probable consequences doctrine. The People also noted that at trial, one of defendant's companions had attempted to take blame for the shooting.

Nevertheless, the People, citing *People v. Bentley* (2020) 55 Cal.App.5th 150,[6] contended defendant was ineligible for resentencing because he was the actual shooter and had acted with the express intent to kill. This was because the "jury was instructed on the attempted murder counts that it 'must be proved . . . that a direct but ineffectual act

---

[5] See footnote 2 *ante*.

[6] The court in *Bentley* held that where the jury had expressly found true a special circumstance allegation that the "murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle with the intent to inflict death[,]" (§190.2, subd. (c)), the defendant was per se ineligible for former section 1170.95 relief. (*People v. Bentley*, *supra*, 55 Cal.App.5th at p. 154.) The California Supreme Court subsequently granted review of *Bentley*, but dismissed and remanded the matter after issuance of the Court's opinion in *People v. Lewis* (2021) 11 Cal.5th 952. (*People v. Bentley* (2021) 499 P.3d 998, December 15, 2021, S265455.) The court in *People v. Strong* (2022) 13 Cal.5th 698, held that special circumstance findings rendered prior to 2015 do not, alone, render a defendant ineligible for former section 1170.95 relief as a matter of law. (*Strong*, at p. 710.)

was done by one person towards killing another human being; and (t)he person committing the **act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being**.' "[7]  (Emphasis in original)

On June 20, 2022, defense counsel filed a reply to the People's request for summary dismissal.  Defense counsel argued that a special circumstance finding alone does not render a defendant ineligible for former section 1170.95 relief.[8]  Moreover, defense counsel noted that in defendant's case, the jury had been instructed with the natural and probable consequences doctrine (CALJIC 3.02):  "This alone, even in the face of the jury's verdicts and findings, should be enough to allow [defendant's] matter to proceed to the next stage, wherein the Honorable Court issues an OSC."

Further, defense counsel observed that at trial, the People had argued that the jury could find defendant guilty of attempted murder under the natural and probable consequences doctrine.  Defense counsel requested the court issue an OSC.

At the hearing on June 24, 2022, defense counsel requested the court issue an OSC.  The court clerk noted, "The OSC has already issued, Your Honor."  The court continued the matter so that it could review the parties' briefs.

---

[7]  The People provided no citation to the jury instruction, no citation to where the jury instruction could be found in the record, and did not attach the jury instruction to their brief.  The quoted language comes from CALJIC 8.66.

[8]  It is notable here that although an issue of apparent contention below, neither the People nor defendant identified any special circumstance finding rendered at defendant's trial.  We infer from the arguments below and on appeal that the parties were referring to the jury's findings that defendant had personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)) in his commission of both attempted murder offenses.  (See footnote 12 *infra*.)

6

At a hearing on July 1, 2022, the court noted that "at an OSC hearing, I am charged with finding beyond a reasonable doubt that the defendant is guilty under the law as it is written now." "If you [just] give me some highlights of what happened at trial . . . it's very difficult for me to honestly and faithfully discharge that responsibility other than to say, 'Not guilty.' . . . I'm not telling you that you have to give me everything at trial or everything that was available—but" other litigants in similar cases have previously "given me adequate transcripts, exhibits, all the things that a jury would normally get, in making its determinations."

The court cautioned that in one case wherein the People simply submitted on the appellate court's opinion at the evidentiary hearing, the court had warned the parties, " 'I'm going to say not guilty as soon as you're done saying the word submit because there's no way I can faithfully discharge my responsibilities in terms of finding whether or not the defendant is guilty beyond a reasonable doubt by reading what the Court of Appeal had to say when I know that all of that is a summary of the facts that a clerk for the appellate justice or the appellate justice found in ruling on the issues that were being contested on appeal.' "

Defense counsel asked the court to move to the OSC stage. The court asked, "Aren't we at the OSC stage?" Defense counsel replied, "I don't believe so, Your Honor." The court noted, "I have it down as an OSC having already been issued in this case. Let me take a look at it just to find out." The clerk responded, "It is at OSC." The court observed that counsel had stipulated to the issuance of an OSC, and the court had

7

filed the OSC: "I issued an OSC on April 25th so we're already at OSC stage." "So it sounds like we need to have a hearing on the merits."

The People responded, "I didn't give you that many documents. The jury found beyond a reasonable doubt that the defendant shot the victims in the back during a robbery and inflicted great bodily injury. That's established beyond a reasonable doubt. It's—it could be one of those cases in which, yes, we do submit mostly on the papers because they state beyond a reasonable doubt that the defendant shot the victims during the course of a robbery and personally inflicted great bodily injury on him." The court continued the matter.

At the hearing on September 9, 2022, the court noted that it was most interested in looking at the jury instructions, which were not attached to the People's request: "I wanted to evaluate . . . the jury instructions in our case to see exactly how the jury was instructed on willful, deliberate, and premeditated, before I came to a conclusion." The court continued the matter again.[9]

At the hearing on September 22, 2022, the court observed that there had been a change in the law, which provided that a special circumstance finding alone no longer precluded a defendant from eligibility for relief. The court noted that it had reviewed the jury instructions; the trial court had instructed the jury with CALJIC 3.01 for aiding and abetting, and CALJIC 3.02 for the natural and probable consequences doctrine: "I think what the judge was trying to instruct the jury on was that in order to find—using natural

---

[9] The minute order reflects, "People to provide additional documents as requested by the court."

8

and probable consequences theory, the defendant guilty of attempted murder, they had to find that the attempted robbery did occur and that the attempted murder was a natural and probable consequence of the attempted murder." "When we look at the natural and probable consequences instruction, it does deal with the crime of attempted murder. It is completely silent as to the special allegation for willful, deliberate, and premeditated."

The court also observed that the trial court instructed the jury with CALJIC 8.66, "which defines the crime of attempted murder, and it requires a direct but ineffectual act was done by one person towards killing another human being. And, two, the person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

The court reasoned, "in this particular case, as to both Counts 1 and 2, the jury did specifically find that your client harbored a specific intent to kill—an intent to kill. That is the clear direction of the willful, deliberate, and premeditated instruction. They had to find an intent to kill in order to find that true. There is nothing in that instruction that says anything about coparticipants or natural and probable consequences."

The court continued, "That being the case, I believe that, at this phase, we're still kind of in the prima facie plus phase. Your client loses based on the verdict forms and the instructions that were given because it is clear that the jury was appropriately

9

instructed as to willful, deliberate, and premeditated. They did find that he intended to kill, and I believe that ends the analysis."[10]

Defense counsel argued the prosecutor "almost gave alternate theories to the jury, which points to prosecutorial misconduct." "In this case, the Court, he relied heavily on the N&P doc. Even with the finding on the gun, even with the ultimate finding on willful and premeditated. He told the jury—and obviously what prosecutors tell jurors is not evidence, but they make it instructional." "[T]he fact that they were charged with N&P itself, which is [CALJIC] 3.02 . . . in this case. And then before that, in fact, they were charged—yeah, they were given aiding and abetting [CALJIC] 3.01, and then attempted—or N&P under [CALJIC] 3.02." In other words, the prosecutor argued the jury could find defendant guilty of attempted murder under either a direct aiding and abetting theory or under the natural and probable consequences doctrine.

The court replied that because the jury was given "a willful, deliberate, and premeditated instruction and verdict," it necessarily found intent to kill, which negated a prima facie case for relief.

The People argued that the jury rejected defendant's accomplice's testimony that he had committed the shooting. Defendant "was the sole shooter. He was the only person charged [as] the shooter, was shooting the victims, and [struck] one of them. And

_____

**10** Neither the jury instructions nor the verdicts were ever expressly introduced into evidence, nor did the court expressly take judicial notice of them. Defense counsel on appeal requested that we augment the record to include the jury instructions; we granted the request. Neither the oral nor written verdicts are part of the record on appeal.

in the opinion issued by the Court of Appeal, . . . which is the factual record, it says, '[defendant] shot [the victim] in the back, and he did so with malice.' "[11]

"The jury, having been given the natural and probable consequences instruction, rejected it.  He was not prosecuted or convicted under any theory in which that was applicable because the jury found [defendant] was the one that shot."  "[T]hey rejected the natural and probable consequence instruction in its entirety, and found that [defendant] was solely responsible for the attempted murder of the victims."  "[T]he jury rejected any notion of natural and probable consequences and its finding of guilt in every single firearm allegation, every single injury allegation, attributable only to the defendant, according to the factual record.  So he was not convicted by the jury under any theory in which malice was [imputed] to him.  The jury instructions were clear.  He acted with express malice and intent to kill."

---

[11]  The actual quote from *Demagnus II* reads, "Defendant used a gun to commit a robbery.  As he ran from the crime scene, defendant fired several shots at two brothers who were working at the business.  The victim of the gunshot was hit in the left shoulder; the bullet entered his left shoulder and exited out his back." (*Demagnus II*, *supra*, E074271.)  Our factual summary in *Demagnus II* was based on a review of the facts as recounted in *Demagnus I*, which, in turn, was based on whether sufficient evidence in the trial court record supported the verdicts. (*People v. Perez* (2010) 50 Cal.4th 222, 229 ["'On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence  [Citation]'  [Citation.]"].)  This was prior to the legislature's repudiation of the use of the substantial evidence standard to ascertain whether the People meet their burden of proof in section 1172.6 petitions, "so the trial court may not rely on [the appellate] court's sufficiency of the evidence finding to reach its conclusion." (*People v. Basler* (2022) 80 Cal.App.5th 46, 61; see fn. 2 *ante* [court's ruling on section 1172.6 petitions not to rely on factual summaries in appellate court opinions].)  We also note that we did not write that defendant acted "'with malice.'"

The court responded, "I did not base my ultimate conclusion on the Court of Appeal[']s recitation of the facts. . . . [T]hat to me is something that I reserve for once we get past the issuance of an OSC, and then evaluating the facts. It is clear that in addition to the willful, deliberate, and premeditated allegations that were found true, two were personal use of a firearm." "[T]he jury has to find that the defendant personally discharged the firearm causing great bodily injury or death. . . . So that is somewhat instructive, but the most instructive thing to me was the true finding on willful, deliberate, and premeditated. The petition is denied at the prima facie stage. I am not issuing an order to show cause."

## II. DISCUSSION

Defendant contends he was entitled to an evidentiary hearing because the court had already issued an OSC. In the alternative, defendant argues defense counsel below provided prejudicial ineffective assistance of counsel by failing to point out to the court that an OSC had already issued.

The People respond that the trial court correctly denied defendant's petition as to the count 1 offense; "however, should this court deem the issue properly presented on appeal, remand is necessary in connection with [defendant's] second attempted murder conviction (count 2)." The People contend that "because this is the only ground for relief appellant asserts on appeal, this Court should deem all other arguments abandoned and deny relief."

12

The People further maintain that the record of conviction establishes as a matter of law that defendant was convicted as a direct perpetrator of the count 1 offense due to the true finding on the intentional discharge of a firearm enhancement.[12]  The People argue the court's issuance of an OSC did not preclude its reconsideration of that order and eventual denial at the prima facie stage.

We hold that regardless of whether the court could revisit its issuance of an OSC, the court erred in finding that the record established that defendant was ineligible for section 1172.6 relief as a matter of law.  Thus, the court should have proceeded to an evidentiary hearing on both counts of attempted murder.

"The Legislature enacted Senate Bill 1437 'to more equitably sentence offenders in accordance with their involvement in homicides.'  (Stats. 2018, ch. 1015, § 1(b).)  The Legislature recognized, 'It is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual

---

[12]  The People do not cite to the record for their conclusion that the jury found true an intentional discharge of a firearm enhancement as to the count 1 offense *alone*.  As noted in footnote 10 *ante*, neither the oral nor written verdicts are part of the record on appeal.  The second amended information charged defendant with section 12022.53, subdivision (d) enhancements as to *both* attempted murder charges.  The court instructed the jury with CALJIC 17.19.5, the instruction for intentional and personal discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)) as to *both* counts of attempted murder.  It does not appear the court instructed the jury with any other personal use enhancements on counts 1 or 2, including lesser enhancements.  The abstract of judgment, on the contrary, appears to reflect that the jury only found true *one* section 12022.53, subdivision (d) enhancement as to count 1 *alone*.  As to count 2, the abstract of judgment reflects a true finding as to a section "12022353(b) [*sic*]" enhancement.  Both *Demagnus I* and *Demagnus II*, reflect that the jury found true allegations that defendant personally discharged a firearm causing great bodily injury to another (§ 12022.53, subd. (d)) as to *both* counts of attempted murder.  (*Demagnus I*, *supra*, E046214; *Demagnus II*, *supra*, E074271.)

13

culpability.' [Citation.] With this purpose in mind, Senate Bill 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

"Effective January 1, 2022, section 1172.6 was amended by Senate Bill No. 775 . . . (Senate Bill 775)." (*People v. Medrano* (2024) 98 Cal.App.5th 1254, 1260.) "Senate Bill 775 [partially] amended section 1172.6, subdivision (a) to expand eligibility for resentencing to persons convicted of 'attempted murder under the natural and probable consequences doctrine.' " (*Id.* at p. 1261.)

"[A]fter the enactment of Senate Bill 1437, a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice aforethought. [Citation.] It is an invalid theory." (*Curiel*, *supra*, 15 Cal.5th at p. 462.) "Senate Bill 1437's operative language . . . eliminates natural and probable consequences liability . . . ." (*Ibid.*) It provides "the opportunity to petition for relief to defendants who were convicted under an invalid theory like the natural and probable consequences doctrine at issue here. [Citation.]" (*Id.* at p. 463.)

"Senate Bill 1437 . . . created a procedural mechanism 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's

14

conviction.  [Citation.]"  (*Curiel*, *supra*, 15 Cal.5th at p. 449.)  "Under section 1172.6, 'A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . .' [Citation.]"  (*Id*. at pp. 449-450.)

"'[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 [citation].  [Citation.]  'When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition "to determine whether the petitioner has made a prima facie case for relief."  [Citation.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.  [Citation.]  If, instead, the defendant has made a prima facie showing of entitlement to relief, "the court shall issue an order to show cause."  [Citation.]'  [Citation.]"  (*Curiel*, *supra*, 15 Cal.5th at p. 450.)

"'The record of conviction will necessarily inform the trial court's prima facie inquiry . . ., allowing the court to distinguish petitions with potential merit from those that

15

are clearly meritless.' [Citation.] 'Like the analogous prima facie inquiry in habeas corpus proceedings, "'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.'"' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 460.)

"'"'[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing." [Citation.] "However, if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.'"' [Citation.] Consequently, '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 460.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*People v. Lewis*, *supra*, 11 Cal.5th at p. 972.) "[T]he 'prima facie bar [is] intentionally and correctly set very low.'" (*Ibid*.)

"'In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief . . . .' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 464) "If the jury has made a factual finding, and it is issue preclusive . . . a court must give effect to that finding. [Citation.]

16

A court giving effect to such a finding does not engage in '"factfinding involving the weighing of evidence or the exercise of discretion.'" [Citation.]" (*Id*. at p. 465.)

A denial of a section 1172.6 petition at the prima facie ""'stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo.'" [Citation.]" (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

"[T]he question is not whether it is likely a defendant could have felt and acted in such a [sufficiently culpable] way, but whether the court's jury instructions foreclose that possibility *as a matter of law*. Only in the latter scenario would a trial court be permitted to deny a defendant's section 1172.6 petition at the prima facie stage. [Citation.] In other words, only in that scenario would the record of conviction 'establish conclusively that the defendant is ineligible for relief.' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 470.)

An intent to kill finding "is certainly relevant to the trial court's consideration of a petitioner's prima facie showing." (*Curiel*, *supra*, 15 Cal.5th at p. 460.) However, "It does not by itself establish any valid theory of liability. [Citation.]" (*Id*. at p. 463; accord *People v. Campbell* (2023) 98 Cal.App.5th 350, 356-357 ["[I]ntent to kill findings do not preclude relief as a matter of law."].) "While a finding of intent to kill does not, itself, suffice to refute a petitioner's allegation under section 1172.6, subdivision (a)(3), a trial court does not end its prima facie inquiry there. Other aspects of the record, such as additional jury findings, might be relevant to the remaining elements of the relevant

17

homicide offense and conclusively refute a petitioner's allegation that he or she could not be convicted . . . under current law." (*Curiel* at p. 463.)

Where "the record of conviction does not conclusively negate the possibility that the jury found" the defendant guilty under a theory that imputed malice to him by the actions of the actual perpetrator, "an evidentiary hearing is required." (*People v. Langi* (2022) 73 Cal.App.5th 972, 984.) On the other hand, where the record of conviction reflects that the defendant was not convicted under any theory of imputed malice, no evidentiary hearing is required. (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1165-1166.)

"[A]lthough in theory, a finding that a defendant personally used a firearm does not in itself prove a defendant is the actual killer [citation], the facts of a particular case may support . . . that conclusion." (*People v. Garrison* (2021) 73 Cal.App.5th 735, 743.) "[W]hen the record shows only one person displayed and used a gun and '[a]ll evidence points to defendant . . . as the one with the gun,' the true finding on a personal use enhancement demonstrates that the defendant was the actual killer. [Citation.]" (*Id.* at p. 744.) "[A]n enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought." (*People v. Offley* (2020) 48 Cal.App.5th 588, 598 (*Offley*); see *People v. Davenport* (2021) 71 Cal.App.5th 476, 485 [no contest plea to second degree murder and § 12022.5, subd. (a), personal use enhancement did not preclude eligibility for relief].) "[A] defendant can proximately

18

cause injury by discharging a firearm within the meaning of section 12022.53, subdivision (d) even *if his or her bullet does not actually strike the victim*." (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1150.)

A defendant is not per se ineligible for relief where "[t]he trial court instructed the jury on the natural probable consequences theory. And the prosecution argued the natural and probable consequences theory to the jury as one of multiple theories in order to prove [the defendant's] guilt for the crime of murder." (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 126, rev. granted May 18, 2022, S274102 [reversing and remanding matter for an evidentiary hearing where the record supported petitioner's prima facie case because the court had instructed the jury on the natural and probable consequences doctrine.].) "Critical to our analysis is that the court instructed the jurors they could find [the defendant] guilty of murder if he aided and abetted one of the three target crimes . . . and the nontarget crime (murder) was a natural and probable consequence of one of the target crimes. [Citation.] Therefore, the jury could have potentially found [the defendant] intended to kill [the victim] under the . . . natural and probable consequence theory, . . . only [by] actually aid[ing] and abet[ing] the nontarget crime . . . ." (*Id*. at p. 128.)

"An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party." (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6; see *Hibernia Sav. & Loan Soc. v. Farnham* (1908) 153 Cal. 578, 584 [An

19

appellate court "is undoubtedly at liberty to decide a case upon any points that its proper disposition may seem to require, whether taken by counsel or not."].)

The People contend that since the court was not prohibited from revisiting its order granting the OSC, and since defendant's appellate counsel has not raised any other relevant issues, defendant has abandoned any argument that the court otherwise erred in denying the petition. We disagree.

Defendant's argument on appeal may be broadly construed as contending that the court erred in not proceeding to an evidentiary hearing. Thus, our review is not constrained by the narrow issues framed in defendant's analysis, but may extend to the broader issue of whether the court erred in denying the petition. Therefore, we proceed to address the broader issue.

Here, the court erred in denying the petition because the record does not support a conclusion that defendant was ineligible as a matter of law. First, there is nothing in this record to support a finding that the jury expressly found defendant specifically intended the death of the victim. As noted in footnotes 10 and 12 *ante*, neither the oral nor written verdicts are part of the record on appeal. Thus, there is nothing to reflect that the jury dispositively determined that defendant acted with intent to kill.

Second, even if there were an express intent to kill finding, this, in and of itself, would not render defendant ineligible for relief. (*Curiel*, *supra*, 15 Cal.5th at pp. 460 & 463.) This is because the jury was presented with two theories under which it could find defendant guilty of attempted murder: (1) it could find that defendant had the specific

20

intent to kill (CALJIC 8.66); or (2) it could find defendant intended to aid and abet the armed robbery or attempted armed robbery, of which the attempted murders were the natural and probable consequences (CALJIC 3.02).

"Because the jury was instructed on the natural and probable consequences doctrine, the jury was required to find only that [defendant] . . . intended to commit one of the underlying target offenses and that [defendant] intended . . . that offense, not [attempted] murder.  Nor was the jury required to find that the underlying target offenses, themselves, were dangerous to human life."  (*Curiel*, *supra*, 15 Cal.5th at p. 468; *id*. at p. 471 ["The jury could have relied on the natural and probable consequences doctrine to convict [defendant] of [attempted] murder, and the findings required under that theory— even when combined with [a] finding of intent to kill  . . . do not encompass all of the elements of any theory of [attempted] murder under current law."  ].)  Thus, the jury could have found defendant guilty only under the natural and probable consequences doctrine.

Both the People and the court below appear to have been under the belief that because the court instructed the jury with CALJIC 8.66, which requires that a defendant harbor "a specific intent to kill unlawfully another human being," the jury necessarily found defendant intended to kill the victim.  This is apparently regardless of the court's additional instruction of the jury with CALJIC 3.02.  However, as defense counsel below noted, CALJIC 8.66 provided only one of two theories under which the jury could have found defendant guilty of attempted murder.  The court's instruction of the jury with

21

CALJIC 3.02 gave the jury the option of rejecting a finding that defendant acted with the specific intent to kill. Otherwise, the court's instruction of the jury with CALJIC 3.02 would have been mere surplusage.

Third, the People argue that by rendering a true finding on the personal and intentional use of a firearm enhancements attached to the attempted murder convictions,[13] the jury implicitly found that the defendant was the actual killer. However, a true finding on a section 12022.53, subdivision (d) enhancement does not establish, as a matter of law, that a defendant is ineligible for section 1170.95 relief. (*Offley*, *supra*, 48 Cal.App.5th at pp. 598-599 ["Because an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought."].) Thus, we cannot say that the jury's findings on those enhancements, alone, rendered defendant ineligible for relief as a matter of law.

Fourth, as the People below conceded, there was testimony at trial that someone other than defendant shot at the victims. (*Demagnus I*, *supra*, E046214.) One of defendant's associates, with whom defendant committed the armed robberies, testified that he, rather than defendant, fired the gun. (*Demagnus I, supra*, E046214; *Demagnus II, supra*, E074271.) Thus, this is not the sort of case where it is clear that there was only a sole perpetrator of the crimes, and that defendant was necessarily the actual shooter. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 233 ["[T]he record here makes clear that

---

[13] See footnote 12 *ante*.

Delgadillo was the actual killer and the only participant in the killing. At trial, defense counsel conceded that the accident occurred while Delgadillo was driving on the wrong side of the road."]; *People v. Pickett* (2023) 93 Cal.App.5th 982, 993, fn. omitted, rev. granted Oct. 11, 2023, S281643 ["[T]here is no allegation or evidence of an accomplice in the killing of [the victim]; the uncontradicted evidence shows [the defendant] acted alone."].) On this record, any determination that defendant was the actual shooter and/or that the jury found that he acted with specific intent to kill requires either speculation or factfinding, neither of which is appropriate at the prima facie stage.

Where the court errs in its handling of a section 1172.6 petition, we apply the *Watson* standard of harmless error analysis, i.e., whether it is " 'reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error.' [Citation.]" (*People v. Oliver* (2023) 90 Cal.App.5th 466, 489, fn. 8, quoting *People v. Watson* (1956) 46 Cal.2d 818; accord *People v. Hurtado* (2023) 89 Cal.App.5th 887, 892-893.)

Here, defendant would be permitted to adduce additional evidence at an evidentiary hearing. (§ 1172.6, subd. (d)(3)) Since we cannot divine what, if any, additional evidence defendant might adduce at the hearing and whether it might be believed, we cannot hold any error harmless. Therefore, the court erred in denying defendant's petition without issuing an order to show cause and holding an evidentiary hearing.

"Because the trial court must consider the trial evidence and assess the strength and credibility of the evidence, section 1172.6 requires that it issue an order to show cause and conduct an evidentiary hearing. We remand the section 1172.6 proceedings for that purpose." (*People v. Campbell*, *supra*, 98 Cal.App.5th at p. 357.)

## III.  DISPOSITION

The order denying defendant's petition is reversed.  The matter is remanded with directions to issue an order to show cause under section 1172.6, subdivision (c), and to hold a hearing under section 1172.6, subdivision (d)(1).  We express no opinion on whether defendant would be entitled to relief following the hearing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.

24